UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| JERAMY DEMOSS | Case No. 6:23-cv-00580 |
| v. | Jury Trial Demanded |
| BWS INSPECTION SERVICES, LLC | |

## ORIGINAL COMPLAINT

1. Jeramy DeMoss (DeMoss) brings this lawsuit to recover unpaid overtime wages and other damages from BWS Inspection Services, LLC (BWS) under the Fair Labor Standards Act (FLSA).

2. DeMoss worked for BWS as an Inspector in Texas.

3. DeMoss regularly worked more than 40 hours a week.

4. But BWS did not pay him overtime wages.

5. Instead of paying overtime, BWS misclassified DeMoss as an independent contractor and paid him a flat amount for each day worked, regardless of the total number of hours he worked in a workweek (a "day rate").

6. BWS's day rate pay scheme violates the FLSA by depriving DeMoss of overtime wages at 1.5 times his regular rates of pay for all hours worked after 40 in a workweek.

### JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

8. This Court has general personal jurisdiction over BWS because BWS is a domestic limited liability company.

-1-

9. Venue is proper in this Court because BWS is headquartered in Mexia, Texas, which is in this District and Division. 28 U.S.C. § 1391(b)(2).

## PARTIES

10. DeMoss worked for BWS as an Inspector from approximately April 2018 until September 2021.

11. Throughout his employment, BWS misclassified DeMoss as an independent contractor to avoid paying him overtime wages.

12. Throughout his employment, BWS paid DeMoss under its illegal day rate pay scheme and failed to pay him overtime compensation for the hours he worked after 40 in a workweek.

13. DeMoss's consent is attached as **Exhibit 1**.

14. BWS is a Texas corporation and can be served with process by serving its registered agent: **William Reed, 1230 LCR 244, Mexia, Texas 76667**, or wherever he may be found.

## FLSA COVERAGE

15. At all relevant times, BWS was an "employer" within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

16. At all relevant times, BWS was an "enterprise" within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

17. At all relevant times, BWS has been part of an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA. 29 U.S.C. § 203(s)(1).

18. At all relevant times, BWS has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (*e.g.*, computers, smart devices, tools, personal protection equipment, etc.) that have been moved in or produced for commerce.

19. At all relevant times, BWS has had an annual gross business volume of at least $1,000,000 in each of the past 3 years.

20. At all relevant times, DeMoss was BWS's "employee" within the meaning of Section 3(e) of the FLSA. 29 U.S.C. § 203(e).

21. At all relevant times, DeMoss was engaged in commerce or in the production of goods for commerce.

22. BWS's misclassification of DeMoss as an independent contractor does not alter his status as an employee for purposes of the FLSA.

23. BWS paid DeMoss under its illegal day rate pay scheme.

24. As a result of BWS's day rate pay scheme, DeMoss did not receive premium overtime wages when he worked more than 40 hours in a workweek.

25. BWS's day rate pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

26. BWS provides inspection services to the oil and gas industry and BWS's services include the inspection of pipeline and facility construction, maintenance, and operations.[1]

27. To meet its business objectives, BWS hires inspectors, including DeMoss, to provide inspection services to its clients.

28. BWS uniformly misclassifies these inspectors (including DeMoss) as independent contractors to avoid paying them overtime wages.

29. But BWS does not hire these inspectors (including DeMoss) on a project-by-project basis.

---

[1] http://www.bwsinspection.com/ (last visited July 31, 2023).

30. Rather, BWS hires and treats these inspectors (including DeMoss) just like regular employees.

31. Despite misclassifying DeMoss as an independent contractor, BWS controlled all meaningful aspects of his employment.

32. BWS controlled DeMoss's rate and method of pay.

33. BWS controlled DeMoss's schedules and assignments.

34. BWS controlled DeMoss's inspection work.

35. BWS required DeMoss to follow BWS's (and its clients') policies, procedures, plans, protocols, and specifications.

36. DeMoss's work was required to strictly adhere to the quality standards put in place by BWS (and/or its clients).

37. In fact, while on a site, DeMoss took all of his direction from, and was directly supervised by, BWS personnel, including the BWS President Blake Reed.

38. DeMoss was not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform his inspection job duties.

39. Indeed, the daily and weekly activities of DeMoss were routine and largely governed by standardized plans, procedures, and checklists created by BWS (and/or its clients).

40. Virtually every job function was predetermined by BWS (and/or its clients), including the tools and equipment used at the job site, the data to compile, the schedule of work, and related work duties.

41. Without the job DeMoss performed, BWS would not have been able to complete its business objective of providing inspection services to its oil and gas industry clients.

42. The work DeMoss performed was an essential and integral part of BWS's core business.

43. DeMoss relied on BWS for work and compensation.

44. DeMoss could not subcontract out the work he was assigned by BWS.

45. DeMoss did not substantially invest in the tools required to complete the overall job to which he was assigned.

46. Rather, BWS (and its clients) incurred the large-scale business and operating expenses like payroll, marketing, job sites, equipment, tools, and materials.

47. DeMoss did not market his services while employed by BWS.

48. BWS (and its clients) set DeMoss's work schedule, which prohibited him from working other jobs while working for BWS.

49. At all relevant times, BWS maintained control, oversight, and direction of DeMoss, including, but not limited to, hiring, firing, disciplining, and other employment practices.

50. Indeed, DeMoss interviewed with and was approved for hire by BWS.

51. In sum, as a matter of economic reality, DeMoss was BWS's employee.

52. BWS paid DeMoss a flat sum for each day worked regardless of the number of hours worked that workweek.

53. BWS did not pay DeMoss any overtime wages when he worked more than 40 hours in a workweek.

54. Specifically, BWS paid DeMoss a flat day rate for each 12-hour shift he worked.

55. BWS also paid DeMoss other sums such as daily per diems, daily car allowances, and a mileage reimbursement.

56. BWS's records reflect the location(s) DeMoss worked each day and week.

57. BWS did not pay DeMoss a guaranteed salary that was not subject to deduction based on the number of days or hours he worked.

58. Rather, BWS only paid DeMoss his set day rate for the actual days he worked.

59. If DeMoss did not work, he did not get paid.

60. Thus, BWS never paid DeMoss on a "salary basis." *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. ---, 143 S.Ct. 677, 685 (2023) ("Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)"); *see also* 29 C.F.R. § 541.604.

61. DeMoss's day rate did not increase when he worked more than 40 hours in a week.

62. DeMoss did not receive overtime wages when he worked more than 40 hours in a week.

63. This is despite the fact that DeMoss regularly worked overtime.

64. Indeed, DeMoss regularly worked 12+ hours a day, for up to 7 days a week, for weeks at a time.

65. Thus, DeMoss regularly worked far in excess of the 40-hour weekly threshold for overtime wages.

66. But BWS never paid DeMoss overtime wages in violation of the FLSA.

### BWS's VIOLATIONS OF THE FLSA WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

67. DeMoss incorporates all other paragraphs by reference.

68. BWS knew it controlled DeMoss's rate of pay.

69. BWS knew it controlled DeMoss's method of pay.

70. BWS knew it controlled DeMoss's schedule.

71. BWS knew it prohibited DeMoss from straying from BWS's (and its clients') procedures, and other protocols in performing his inspection job duties.

72. BWS knew it did not require DeMoss to possess any specialized skillset other than that maintained by all inspectors.

73. BWS knew it did not require DeMoss to possess any advanced degree to perform his inspection work.

74. BWS knew DeMoss's inspection work was integral to BWS's business operations.

75. BWS knew its investment in the tools and equipment necessary for to perform his job relatively outweighed DeMoss's.

76. BWS knew it did not hire DeMoss to work on a project-by-project basis.

77. Thus, BWS knew, should have known, or recklessly disregarded the fact that, as a matter of economic reality, DeMoss was BWS's employee.

78. Nonetheless, BWS misclassified DeMoss as an independent contractor.

79. BWS's misclassification of DeMoss as an independent contractor was neither reasonable, nor was he decision to misclassify DeMoss as an independent contractor made in good faith.

80. BWS knew it was subject to the FLSA's overtime provisions.

81. BWS knew the FLSA required it to pay employees, including DeMoss, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked after 40 in a workweek.

82. BWS knew DeMoss was paid on a day rate basis because BWS dictated and controlled the same.

83. BWS knew DeMoss was paid a flat amount regardless of the number of hours he worked in a workweek.

84. BWS knew it did not pay DeMoss on a "salary basis."

85. BWS knew it did not pay DeMoss any minimum guaranteed salary irrespective of the number of days he worked.

86. Thus, BWS knew, should have known, or recklessly disregarded the fact that DeMoss was a non-exempt employee entitled to overtime wages.

87. Nonetheless, BWS did not pay DeMoss overtime wages when he worked more than 40 hours in a workweek.

88. BWS knew DeMoss worked more than 40 hours in at least one workweek during the relevant statutory period because BWS required him to do so.

89. Thus, BWS knew, should have known, or recklessly disregarded the fact that it failed to pay DeMoss overtime wages in violation of the FLSA.

90. BWS's failure to pay DeMoss overtime wages was neither reasonable, nor was the decision not to pay him overtime wages made in good faith.

91. BWS knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived DeMoss of overtime wages in violation of the FLSA.

92. In fact, BWS has been sued by employees previously for failing to pay overtime wages, including for paying employees under this same illegal day rate pay scheme. *See*, *e.g.*, *Russell v. BWS Inspection Services, LLC*, No. 6:22-CV-00910-ADA-JCM (W.D. Tex.); *Sisk v. BWS Inspection Services, LLC*, No. 4:21-CV-00087-DC-DF (W.D. Tex.).

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

93. DeMoss incorporates all other paragraphs by reference.

94. BWS violated the FLSA by employing DeMoss in a covered enterprise for workweeks longer than 40 hours without paying him overtime wages at rates not less than 1.5 times his regular rate of pay for the hours he worked after 40 in a workweek.

95. BWS's unlawful conduct harmed DeMoss by depriving him of the overtime wages he is owed.

96. Accordingly, DeMoss is entitled to overtime wages under the FLSA in an amount equal to 1.5 times his regular rate of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## JURY DEMAND

97. DeMoss demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, DeMoss seeks the following relief:

a. An Order pursuant to Section 16(b) of the FLSA finding BWS liable for unpaid overtime wages due to DeMoss, plus liquidated damages in amount equal to his unpaid compensation;

b. A Judgment against BWS awarding DeMoss all his unpaid overtime wages, liquidated damages, and any other penalties available under the FLSA;

c. An Order awarding attorney's fees and costs of this action;

d. Pre- and post-judgment interest at the highest rates allowed by law; and

e. Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Michael A. Josephson*
    **Michael A. Josephson**
    Texas Bar No. 24014780
    **Andrew W. Dunlap**
    Texas Bar No. 24078444
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

    AND

    **Richard J. (Rex) Burch**
    Texas Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR DEMOSS**